**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                            SAN FRANCISCO DIVISION
10
11   CHARTSIS SPECIALTY INSURANCE              Nos. C 11-05696-RS & 12-02935-RS
     COMPANY,
12
                     Plaintiff,                **ORDER DENYING MOTION TO**
13                                             **DISMISS, GRANTING MOTION FOR**
         v.                                    **SUMMARY JUDGMENT, AND**
14                                             **DENYING RELIEF FROM**
     TELEGRAPH HILL PROPERTIES, INC.           **AUTOMATIC ADMISSIONS**
15   *et al.*, and W.B. COYLE,
16                   Defendants.
17   _____/
18   CHARTSIS SPECIALITY INSURANCE
     COMPANY,
19
                     Plaintiff,
20       v.
21   THP-SF, INC., DOES 1-30,
22                   Defendants.
23   _____/
24                          I.    INTRODUCTION
25           In two related cases, Plaintiff Chartsis Specialty Insurance Company ("Chartsis") seeks
26   declaratory judgments that it need not defend nor indemnify defendants Telegraph Hill Properties,
27   Inc., its principal and president W.B. Coyle, and its subsidiary THP-SF, Inc. in a case now pending
28   against them in the Superior Court for the City and County of San Francisco, *Ferguson et al. v. W.B.*

**United States District Court**
For the Northern District of California

1   *Coyle et al.*, No. CGC-11-512746.  The *Ferguson* case challenges the apportionment of the sale

2   proceeds of an apartment in San Francisco owned as a tenancy in common (TIC) by Black Ice

3   Partners, LLC, in turn owned by multiple investors including Coyle.  Chartsis argues that Coyle

4   owned 15% or more of the property that is the subject of the *Ferguson* case, and coverage in such

5   situations is excluded under the insurance policy.

6       Two sets of nearly identical motions have been brought in both *Chartsis v. Telegraph Hill*

7   *Properties and Coyle* and *Chartsis v. THP-SF*.  Defendants move the court to exercise its discretion

8   under the Declaratory Judgment Act ("DJA") to dismiss, or in the alternative, to stay this case

9   pending the resolution of the *Ferguson* case in state court.  Plaintiffs move for summary judgment

10  on the basis that defendants, in failing to respond to requests for admission, automatically admitted

11  that they owned 15% or more of the subject property.  Defendants move for relief from such

12  automatic admissions and their failure to make initial disclosures under Federal Rule of Civil

13  Procedure 26.  For the reasons discussed below, the motions to dismiss are denied, the motions for

14  relief from admissions are denied, and the motions for summary judgment are granted.

15                II.    BACKGROUND

16      Coyle is the President of Telegraph Hill Properties, a real estate company in San Francisco.

17  He was formerly a licensed real estate broker and remains the qualified person who made THP-SF, a

18  subsidiary of Telegraph Hill Properties, eligible to hold a real estate broker's license.  Chartsis

19  entered into a contract with Telegraph Hill Properties to provide it with a claims-made real estate

20  professional liability policy for "real estate services" including "property management services" and

21  "real estate agent/broker services."  The policy covers the named insured Telegraph Hill Properties

22  as well as its officers, including Coyle.  Although Chartsis disputes that THP-SF is an insured under

23  the policy, Chartsis has assumed that THP-SF qualifies as an insured for the purposes of these

24  motions.  Policy exclusion "w" bars coverage for any claim "arising out of or resulting, directly or

25  indirectly, from the purchase of property by, or the sale . . . of property developed, constructed or

26  owned by: (1) any insured; (2) any entity in which any insured has or had a financial interest or a

27  contemplated financial interest."  Exclusion w does not apply if, at the time of the sale or lease, the

28  insured's ownership interest was less than 15%.

**United States District Court**
For the Northern District of California

1  Telegraph Hill Properties, Coyle, and THP-SF (collectively, "defendants") were named as

2  defendants in the *Ferguson* case and Chartsis subsequently assumed their defense.  Chartsis and the

3  defendants dispute whether Coyle owned an interest in the property that is the subject of the

4  *Ferguson* case of 15% or more, such that exclusion w would apply thereby relieving Chartsis of any

5  duty to defend or indemnify.  The *Ferguson* plaintiffs have alleged a scheme by defendants to

6  induce them to enter into an investment venture with Coyle—Black Ice Partners, LLC—which

7  purchased, developed, and sold the property commonly known as 2876 Washington Street in San

8  Francisco, California.  Telegraph Hill Properties and THP-SF allegedly acted in concert with Coyle

9  to serve as real estate broker to the transactions involving the subject property.  The *Ferguson*

10  complaint avers that Coyle breached the Black Ice operating agreement and his fiduciary duties as

11  managing member of it.  It brings causes of actions against all defendants for breaches of their

12  fiduciary duties as brokers, agents, and property managers in connection with the development and

13  sale of the property, for fraudulently inducing plaintiffs to enter the Black Ice operating agreement,

14  and for negligence in the sale of the property.  The *Ferguson* plaintiffs also seek an accounting as to

15  all defendants related to the purchase, management, and sale of the property.

16  The *Ferguson* plaintiffs were co-owners of Black Ice with Coyle and seek reimbursement for

17  their alleged share of the sale proceeds from 2876 Washington, which Black Ice owned.  They

18  dispute that Coyle is entitled to his claimed 28% of the proceeds from the sale of the property,

19  averring that he failed to make the initial capital contribution to Black Ice that would have entitled

20  him to such a share.  In their briefing, both Coyle and Chartsis characterize the *Ferguson* plaintiffs

21  as contending that Coyle is entitled to at most 20% (rather than 28%) of Black Ice's proceeds from

22  the sale of 2876 Washington, pointing to the operative complaint's allegation that Coyle represented

23  he would contribute $100,000 toward Black Ice's initial capital of $500,000.  *See Ferguson* Third

24  Amended Complaint ("TAC"), Case No. 11-05696, Dkt. 40-10, ¶58(h).

25  Chartsis takes the position that the *Ferguson* case will not answer the question of Coyle's

26  ownership share of 2876 Washington, because plaintiffs in that case do not seek equitable relief

27  retroactively establishing their *ownership shares in the property* at the time it was sold.  Rather,

28  Chartsis characterizes the *Ferguson* case as determining whether Coyle is entitled to 28% or 20% of

the *proceeds from the sale of the property*.  Whether Coyle is entitled to 20% or 28% of the proceeds from the sale of 2876 Washington, Chartsis argues that Coyle has admitted he owned 28% of Black Ice at the time of the sale, which equates to a 15% or more ownership interest in 2876 Washington, excluding the *Ferguson* case from being covered under the insurance policy.  Even if the state court found in *Ferguson* that Coyle actually owned only 20% of Black Ice at the time of the sale of 2876 Washington, Chartsis believes this is also sufficient to establish that exclusion w applies.[1]  Therefore Chartsis argues that under no possible scenario can the *Ferguson* action result in a factual finding that will affect the coverage questions presented in the pending declaratory judgment actions against defendants.

Coyle believes that there is significant overlap between the issues here and the *Ferguson* case because both will require a factual finding of his percentage ownership of Black Ice, upon which his ownership of the subject property depends.  Coyle, however, denies that his ownership interest in Black Ice equates to his ownership interest in the subject property, due to the fact that 2876 Washington is one of eight addresses held as TICs which constitute a single parcel of real property with one title.  A TIC is a somewhat unusual form of property ownership that is nonetheless prevalent in San Francisco.  "The central characteristic of a tenancy in common is simply that each tenant is deemed to own by himself, with most of the attributes of independent ownership, a physically undivided part of the entire parcel."  Black's Law Dictionary, Tenancy (9th ed. 2009).

Coyle has provided a declaration recounting his purchase of a single parcel of real property located at 2870-2878 Washington Street and 2300-2304 Divisadero Street in San Francisco.  *See* Case No. 11-5696, Dkt. 44 ¶4.  The property included one building with eight residential units, each with its own address, of which 2876 Washington is one.  *See id.*  Coyle's plan was to "flip" the property by finding eight buyers, each of whom would own an undivided interest in the entire property and a contractual right to exclusive possession of one of the units as tenants in common.  *See id.*  Coyle was only able to secure buyers for five of the eight units.  *See id.* at ¶5.  Hades Group,

---

[1] The *Ferguson* complaint, however, continues that "it is unknown to Plaintiffs whether W.B. Coyle actually put forth his initial capital contribution of $100,000," which appears to leave open the possibility that the *Ferguson* plaintiffs will argue Coyle is entitled to less than 20% of the proceeds from the sale of 2876 Washington.  *See id.* at ¶60(d).

LLC, in which Coyle owns a 50% interest, purchased two of the unsold undivided interests in the parcel (one of 12.125% and one of 12.250%) with accompanying contractual rights to occupy two of the units, 2300 and 2304 Divisadero. Coyle describes these units as less desirable because tenants who are difficult to evict under San Francisco's rent control ordinance resided in them. Black Ice also purchased an undivided interest in 12.125% of the property with the right to occupy 2876 Washington. Coyle argues that, due to the nature of the TIC, to determine whether exclusion w applies, the correct question is not whether he owned a 15% or greater interest in Black Ice, which had the right to occupy 2876 Washington, but whether his 50% interest in the Hades Group and its two undivided interests in the whole building combined with his uncertain ownership percentage of Black Ice and its single undivided interest in the building give him a total interest in the entire building of 15% or greater.

Coyle posits that determining his ownership interest in the building as a whole is complicated further by special rules for valuing TICs, under which the actual value of an interest in a TIC is determined not by the record title percentage of the undivided interest in the whole building, but by the value of that ownership interest plus the value of the right of occupancy of the unit under contract. Coyle argues that the values for the units owned by Hades and Black Ice are lower than the value of the undivided interests in the building that they owned because those units, as noted above, were less desirable as they were occupied by long-term and difficult to evict tenants paying below-market rent. Further, Coyle argues that the value of his interests in the units should be discounted by 20-30% due to his fractional ownership of them through the LLCs, which in turn makes them not readily saleable. Thus, under Coyle's accounting, his total interest in the building, measured by his collective ownership shares of three units through Hades and Black Ice was less than 11%, meaning the *Ferguson* case does not fall under exclusion w to the Chartis policy.

The barrage of motions presently before the court notwithstanding, the parties have been less than diligent in litigating these cases. Chartis did not serve the initial disclosures required by Rule 26 until after it filed its motions for summary judgment, well past the deadline to do so, while defendants never served theirs. Chartis served requests for admission (RFAs) on defendants on September 26, 2012. Defendants, incorrectly assuming that their obligations to respond to these

United States District Court

For the Northern District of California

RFAs were excused either because Chartsis had thus far failed to serve its initial disclosures or because there was an "understanding" that all deadlines were stayed pending ongoing mediation efforts, did not serve responses to the RFAs on Chartsis. Federal Rule of Civil Procedure 36(a)(3) dictates that if the party to whom an RFA is directed does not serve an answer or objection in response upon the requesting party within 30 days, the matter is deemed admitted. *See* Fed. R. Civ. Proc. 36(a)(3). RFA 15, served separately on each defendant, requested an admission that the defendant owned 15% or more of the real property that is the subject of the *Ferguson* case.

On the basis of these default admissions, Chartsis moves for summary judgment, arguing that there is no triable issue of fact remaining over whether it has a duty to defend or indemnify defendants in the *Ferguson* case, because defendants have admitted that they owned 15% or more of the subject property and therefore exclusion w applies. Defendants oppose the motion for summary judgment and move for relief from their automatic admissions, as well as an extension of the deadline in which to serve their initial disclosures.[2]

## III.   LEGAL STANDARD

### A.  Dismissal Under the Declaratory Judgment Act

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[3] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (discussing the DJA, 28 U.S.C. §§ 2201-2202). The language of the Act itself is permissive, allowing that Courts "may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton*, 515 U.S. at 288.

---

[2] Defendants filed a surreply to Chartsis's motion for summary judgment, to which Chartsis filed an objection and moved to strike on the basis that the defendants had not requested prior court approval to file it as required under Civil Local Rule 7-3(d). The objection is sustained and the motion is granted. Defendants' surreply is striken for failure to comply with the local rules.
[3] Although the Declaratory Judgment Act does not provide an independent ground for subject matter jurisdiction, the Court has diversity jurisdiction over this case.

United States District Court

For the Northern District of California

In *Brillhart v. Excess Insurance Company of America*, the Supreme Court instructed that district courts should avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" in deciding whether to "proceed to determine the rights of the parties" under the Act.  316 U.S. 491, 495 (1942).  "The *Brillhart* factors remain the philosophic touchstone for the district court." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (discussing *Brillart*, 316 U.S. at 495).  They state that "[t]he district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).  The Ninth Circuit has identified additional and potentially relevant considerations such as:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (quoting *Kearns*, 15 F.3d at 155 (Garth, J., concurring)).

"[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance cases specifically." *Id.* at 1225.  The Ninth Circuit has noted, however, that "[c]ourts should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court." *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1374 (9th Cir. 1991).

B.  Relief from Admissions Under Rule 36(a)

When one party serves requests for admission on another under Federal Rule of Civil Procedure 36(a), the matter is deemed admitted "unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. Proc. 36(a).  If admitted, the matter "is conclusively established unless the court, on motion,

permits the admission to be withdrawn or amended." Fed R. Civ. Proc. 36(b). "[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* Even if both prerequisites are met, Rule 36 "is permissive, not mandatory," in that the court may allow withdrawal or amendment of an admission, but is not required to do so. *See Conlon v. United States*, 474 F.3d 616, 621, 625 (9th Cir. 2007). "[A] district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions." *Id.* at 622. "However, in deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." *Id.* at 625.

C. Motions for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255.

IV.    DISCUSSION

A.    Motions to Dismiss Under the Declaratory Judgment Act

The question presented by defendants' motion to dismiss or, in the alternative, to stay, is whether this court should exercise its discretion under the DJA to hear state law insurance coverage actions where the underlying liability case is pending in state court? Here, "[b]ecause the state court case d[oes] not include the coverage issue, and because the coverage issue in the federal action [i]s

United States District Court

For the Northern District of California

not contingent on any further state proceedings" there is good cause to exercise jurisdiction. *Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999). The *Ferguson* action is not parallel to this case. It has different plaintiffs and raises separate issues that can be decided independent of those presented to the state court. *See Wilton*, 515 U.S. at 290 (describing a parallel proceeding as one "presenting an opportunity for ventilation of the same state law issues"). The state court in *Ferguson* will determine to which portion of the proceeds of the sale of 2876 Washington Coyle is entitled. That question turns on an analysis of facts surrounding the financing of Black Ice and the sale of 2876 Washington. This Court, on the other hand, must interpret the Chartis insurance policy in light of uncontested facts, such as the content of the Black Ice operating agreement. Whether the state court ultimately reduces Coyle's proceeds from the sale of 2876 below his ownership percentage in that entity as set forth by its operating agreement is irrelevant here. Accordingly, these declaratory judgment actions can efficiently "settle all aspects of the controversy" over insurance coverage without infringing on the state court's autonomy to decide the separate issues presented to it by the *Ferguson* action or risking inconsistent outcomes. *Dizol*, 133 F.3d at 1225 n.5.

While the state court could afford the same remedy that Chartis seeks here, a declaratory judgment, exercising jurisdiction over this action does not encourage forum shopping. *Compare Am. Nat'l Fire Ins. Co v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995) *overruled on other grounds by Dizol*, 133 F.3d 1220.[4] As in *Krieger*, "[t]his court finds a countervailing 'forum shopping' consideration . . . : that of preventing the Defendants, who have not fared well . . . in this action, from wiping the slate clean and starting this litigation anew in state court" rather than risking an unfavorable ruling on the merits of plaintiffs' summary judgment motion. *Krieger*, 181 F.3d at 1119. "Providing Defendants with a 'second bite at the apple' in state court would be unjust to Plaintiff at this late juncture, and would constitute a significant waste of both state and federal

---

[4] *Hungerford* was overruled in part by the Ninth Circuit sitting en banc in *Dizol*, for the same reason as were other cases relied upon by defendants. *E.g.*, *Polido*, 110 F.3d 1418, *Employer's Reinsurance Corp. v. Karussos*, 65 F.3d 796 (9th Cir. 1995), and *Robsac*, 947 F.2d 1367. *Dizol* held that a district court need not sua sponte determine whether jurisdiction of a declaratory judgment action should be declined. *See* 133 F.3d at 1227. Although Chartis faults defendants' reliance on cases overruled on these grounds by *Dizol*, this holding does not make such cases any less persuasive or binding with respect to the other issues for which they are cited herein.

judicial resources." *Id.* Chartsis filed the first of its complaints in November 2011, well over a year ago. *See* Case No. 11-05696, Dkt. 1. Defendants answered the complaints and engaged in attempts to mediate the cases, never giving any hint that they disputed the Court's ability to exercise its jurisdiction pursuant to the DJA. Only now, facing the prospect of summary judgment, have they moved to dismiss the cases under the DJA.

Dismissing these actions at this late stage would only serve to create duplicative and unnecessary litigation, unfairly benefiting defendants. As defendants have consented to the jurisdiction of this court for more than a year, there is no apparent unfairness to them in continuing exercise of it. Nor would proceeding here cause any inconvenience to defendants or create an entanglement between the federal and state court systems. *See Kearns*, 15 F.3d at 144, 155. Therefore, the motions to dismiss under the DJA are denied.

B.     Motions for Relief from Automatic Admissions

Defendants' conduct in these cases has been characterized by delay. As mentioned above, Chartsis's case against Telegraph Hill Properties and Coyle has been pending since November 2011. After at least a dozen in-person attempts to serve the summons in that case were unsuccessful, Chartsis was forced to move for permission of the court to serve Telegraph Hill Properties and Coyle by alternative methods. *See* Case No. 11-5696, Dkts. 12 & 13. After perfecting alternative service, Chartsis obtained defaults against both defendants. *See* Case No. 11-5696, Dkts. 18 & 20. It was only after defaults had been entered that defendants' counsel, having previously insisted that they did not represent defendants, reversed course in May 2012 and stated that they did represent Telegraph Hill Properties and Coyle after all. Those parties then requested that Chartsis stipulate to set aside the defaults, but continued to ignore correspondence from plaintiffs' counsel regarding such a stipulation for months. In response, Chartsis filed a separate suit against THP-SF in June 2012, and moved for entry of a default judgment against Telegraph Hill Properties and Coyle in July 2012. *See* Case No. 12-2935, Dkt. 1 and Case No. 11-5696, Dkt. 24. Only after plaintiffs took these actions did defendants' counsel agree to a stipulation setting aside the defaults and providing that they would accept service for THP-SF. *See* Case No. 11-5696, Dkt. 27.

United States District Court

For the Northern District of California

On August 9, 2012, after an initial case management conference, a scheduling order was entered setting deadlines and referring the parties to mediation. Despite having agreed to serve their initial disclosures by August 23, 2012, no party timely did so. *See* Dkt 32. The parties' mediation efforts, begun in August 2012, concluded on December 3, 2012, with no resolution of the cases. On September 26, 2012, plaintiff served defendants with written discovery, including RFAs, to which responses were due on October 29, 2012. Defendants explain that they failed to respond to the RFAs because they were "lulled" into thinking that discovery was not allowed until after the parties had served their initial disclosures and that all deadlines were waived while mediation was ongoing. The record does not indicate that anyone did anything to give defendants this impression, but rather that it flowed solely from a misreading of the Federal Rules of Civil Procedure.

Discovery closed on November 30, 2013. *See* Dkt. 34. Beginning on December 18, 2012, and continuing for nearly two months, defendants ignored Chartsis's repeated efforts to contact them. *See* Opp. to Mot. for Relief from Admissions, Case No. 11-5696, Dkt. 58. This continued even after Chartsis filed its motions for summary judgment on January 24, 2013. Defendants did not communicate with Chartsis until February 5, 2013, two days before their opposition to the motions for summary judgment were due, at which point they asked plaintiff to stipulate that defendants could serve late answers to the RFAs. *See id.* Only after responding to the motions for summary judgment did defendants move to dismiss this case under the DJA and for relief from their automatic admissions. *See* Case No. 11-5696, Dkts. 42, 45, & 50.

As the party relying on the deemed admissions, the burden is on Chartsis that it would be prejudiced if defendants' motions for relief were granted. *See Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007). "The prejudice contemplated by Rule 36(b) . . . relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). Chartsis relies on the Ninth Circuit's decision in *Conlon v. United State* in arguing that it would be severely prejudiced because it relied on defendants' admissions for over four and half months before defendants requested relief. During that time, Chartsis refrained from further discovery on the issue, believing it to have been

1   established by the admissions.  Discovery then closed, and Chartsis filed motions for summary

2   judgment based on the admissions.

3          In *Conlon*, the Ninth Circuit held that "reliance on a deemed admission in preparing a

4   summary judgment motion does not constitute prejudice," 474 F.3d at 623, and further noted a

5   "reluctan[ce] to conclude that a lack of discovery, without more constitutes prejudice" because

6   "[t]he district court could have reopened the discovery period and prejudice must relate to the

7   difficulty a party may face in proving its case at trial." *Id.* at 624 (internal citations omitted).

8   Nevertheless, the Ninth Circuit upheld the district court's finding that allowing the admission to be

9   withdrawn would prejudice the opposing party because it had relied on the admissions for two and

10  half months and the request to withdraw the admissions was made only eight days before trial.  *See*

11  *id.*

12         Here, while Chartsis relied on defendants admissions for a prolonged period of time even

13  greater than that in *Conlon*, unlike in that case the motion to withdraw the deemed admissions was

14  not made at such a late stage in the action.  *See id.*  At this point, any potential prejudice to Chartsis

15  could be mitigated by the reopening of discovery, which would allow it to investigate these issues

16  further and obtain responses to its interrogatories.  Accordingly, "the court is not persuaded that it

17  would prejudice the requesting party in maintaining or defending the action on the merits" to allow

18  the deemed admission to be withdrawn.  Fed. R. Civ. Proc. 36(b).

19         That said, allowing defendants to withdraw their admissions at this stage would not

20  "promote the presentation of the merits of the action."  Fed. R. Civ. Proc. 36(b).  Defendants only

21  seek to withdraw their admissions to RFA 15, which asked them to admit directly that Coyle owned

22  at least 15% of the subject property, defined in the requests as "the real property commonly known

23  as 2876 Washington Street, San Francisco, California." *See* Dkt. 21-3 at 3.  Defendants continue to

24  admit that Coyle owned 28% of Black Ice, that Black Ice sold the subject property, and that Coyle's

25  ownership of Black Ice determines his ownership interest in the subject property. *See* Dkts. 46 at 6-

26  7, 48-1 (proposed responses to RFAs 11, 12, and 14).  In the face of those other admissions,

27  defendants' purported denial that Coyle owned at least 15% of the subject property would only

28  serve to obscure the presentation of the merits, rather than facilitate it.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1     As both prongs of the test established by Rule 36(b) for withdrawing admissions have not

2  been met, the motions for relief from automatic admissions are denied.  Indeed, even if both prongs

3  had been satisfied, an exercise of discretion to allow defendants relief from their automatic

4  admissions would not be warranted.  "[O]ther factors, including whether the moving party can show

5  good cause for the delay and whether the moving party appears to have a strong case on the merits"

6  weigh against granting defendants the relief they seek.  *Conlon*, 474 F.3d at 625.  No such good

7  cause relative to the four and half month delay in responding to the RFAs and in failing to move for

8  relief from the deemed admissions more promptly has been shown.  Defendant's counsel submitted

9  a declaration explaining that it moved offices on October 31, 2012, its paralegal quit, and that lead

10  counsel took a vacation on December 29, 2012.  None of these constitute good cause for delay.

11  Responses to the RFAs were due on October 29, 2012—before each of the events offered as excuses

12  occurred.  *See* Fed. R. Civ. Proc. 5(b)(2)(C), 6(d).  Furthermore, at the hearing on the motions,

13  defense counsel conceded that he did not have such "good cause," requesting only that his client not

14  be held accountable for his errors.

15     Besides the absence of a showing of good cause, defendants' case on the merits is lacking.

16  Even if they were permitted to deny RFA 15, they have no evidence that Coyle owns less than 15%

17  of the subject property as defined in the RFAs.  Defendants would not be more likely to defeat

18  Chartis's summary judgment motions in the absence of their deemed admissions.  Therefore, the

19  motions for relief from automatic admissions are denied.[5]

20     C.     Motion for Summary Judgment

21     Chartis moves for summary judgment on the basis that the *Ferguson* case involves 2876

22  Washington, a property in which Coyle owned 15% or more through his interest in Black Ice, and

23  thereby falls within exclusion w to the policy.  Pursuant to exclusion w, the "policy does not cover

24  any claim . . . . arising out of or resulting, directly or indirectly, from the purchase of property by, or

25  the sale, leasing, appraisal, or property management of property developed, constructed or owned

26  ───────────────

27  [5] Defendants also seek "relief" from their failure to make Rule 26 disclosures.  Although neither party timely served its disclosures "[a] party is not excused from making its disclosures . . . because another party has not made its disclosures."  Fed. R. Civ. Proc. 26(a)(1)(E).  Rule 26 disclosures

28  must be supplemented or corrected on an ongoing basis by the parties.  *See* Fed. R. Civ. Proc. 26(e). Leave of the Court is not required for either party to serve Rule 26 disclosures, initial, supplemental, or otherwise.

by: . . . any entity in which any insured has or had a financial interest or contemplated interest."
Exhibit A to Complaint ("the policy"), Case No. 11-5696, Dkt. 1 at 16-17.  Where real estate
agent/broker coverage is selected, as here, exclusion w does "not apply to any claim arising out of or
resulting, directly or indirectly from: (i) the sale or leasing of real property in which the combined
ownership interest of all insured's hereunder was, at the time of sale or lease, less than fifteen
percent (15%)."  *Id.* at 17.

The Black Ice operating agreement clearly states that Coyle owns 28% of the partnership's
ownership units.  *See* Exhibit A to First Amended Complaint in *Ferguson* Case, attached as Exhibit
B to Complaint ("Black Ice operating agreement"), Case No. 11-5696, Dkt. 1 at 51.  Coyle admits
that he owned a 28% interest in Black Ice, which in turn purchased and sold the unit at 2876
Washington.  Opp. to MSJ, Case No. 11-5696, Dkt. 42 at 2.  The core dispute between the parties is
not how much of Black Ice Coyle owned, or whether Black Ice owned 2876 Washington, but rather,
whether 2876 Washington constitutes a "property" as the term is used in the policy language.

The *Ferguson* case advances claims arising out of the sale of a property described as "2876
Washington."  TAC, Dkt. 40-10, ¶13.  Coyle argues that the existence of such a property is a legal
fiction, as no separate deed exists for it.  Rather, a deed exists for a parcel of real property on which
there are two apartment buildings encompassing the addresses 2870-2878 Washington and 2300-
2304 Divisadero.  Black Ice owns a 12.125% undivided interest in that larger parcel and a
contractual right to occupy unit 2876 Washington as tenants in common.  Coyle argues that, for
insurance coverage purposes, the "property" that is the subject of the *Ferguson* case should be
defined as 2870-2878 Washington and 2300-2304 Divisadero.  When Coyle's other ownership
interests in the buildings through the Hades Group are taken into account, he contends that he still
owns less than 15% of the "property."  In other words, although Coyle admits to owning 28% of
Black Ice, because that entity owned a 12.125% undivided interest in 2870-2878 Washington and
2300-2304 Divisadero as a whole, he argues that his Black Ice ownership equates to no more than a
3.395% ownership interest in the entire undivided property.

Nos. C 11-05696-RS & 12-02935-RS
ORDER

This highly technical argument is not persuasive. While granting the undivided nature of property ownership in TICs, that fact by itself ignores how the real estate transaction at issue functioned in reality.

> While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs. On the other hand, if the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectation of the insured.

*Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264-65 (1992) (internal citations and quotations omitted). Here, the meaning of the word property in the policy is ambiguous. Coyle argues that it should be strictly construed to refer only to the entire parcel of property held through a single title, which in this case would be 2870-2878 Washington and 2300-2304 Divisadero. Chartis proposes a more flexible definition of property that encompasses a property interest in a particular individually saleable unit, whether that interest constitutes an entire deeded parcel or not.

"[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured's objectively reasonable expectations." *Id.* at 1265. It simply would not be objectively reasonable for Coyle, as the insured, to own more than 15% of three separate apartments, but to maintain that coverage under the policy stands despite exclusion w owing to the TIC ownership structure. Here, although Black Ice bought a 12.125% record title interest in the larger parcel, it also owned the contractual right to occupy exclusively (and transfer) 2876 Washington. It did not have the right to occupy or sell other units, nor did owners of other interests in the TIC have the right to enter, occupy or transfer 2876 Washington. Black Ice could, and did, sell the right to reside in 2876 Washington on the open market. That transaction is the subject of the *Ferguson* action. With a 28% interest in Black Ice, it is not objectively reasonable for Coyle to deny that he is an owner of the property within the meaning of the policy.

In interpreting that policy, "the court must interpret the language in context, with regard to its intended function in the policy." *Id.* The function of the exception to exclusion w at issue here was

to prevent Chartsis from having to defend and indemnify real estate agents and brokers such as Coyle under their professional liability policies for transactions in which they were individual investors.  With respect to the sale of 2876 Washington, at issue in the *Ferguson* case, Coyle was functioning as an individual investor.  The unreasonableness of Coyle's position is further underscored by the fact that he individually purchased the entire 2870-2878 Washington and 2300-2304 Divisadero parcel and resold it, and that he retained a greater than 15% interest in not one, but three separate units in the buildings.  In the context of all the facts, the function of exclusion w was to ensure that Chartsis would not have to provide coverage to Coyle in just such situations where his primary role was as an investor.  The term "property" in the policy in this case refers to 2876 Washington, not the entire parcel encompassing two buildings.  This interpretation reflects the way Coyle actually owned and sold property in the real world, and is the objectively reasonable interpretation of the policy language from the perspective of a reasonable insured.

Coyle raises the additional argument that although he initially owned 28% of Black Ice, because the *Ferguson* case challenges whether he met his ownership obligations and whether he is entitled to 28% of the proceeds of the sale of 2876 Washington, it is possible that the state court will ultimately determine he owns less than 15% of the property.  As discussed above in the context of the motion to dismiss under the DJA, the questions presented to the state court can be decided independently of those presented here.  Even if the state court determines that Coyle did not fulfill his contractual obligations under the Black Ice operating agreement or that his proceeds from the sale of 2876 Washington should be reduced below his percentage ownership in Black Ice, such findings do not affect the outcome in these coverage cases.  The state court is not being asked to provide the equitable remedy of retroactively reapportioning the ownership shares in Black Ice.  Regardless of the percentage of the proceeds from the sale of 2876 Washington to which Coyle is entitled, it is undisputed that at the time Black Ice sold 2876 Washington, Coyle held 28% of the ownership shares in that entity.  That is sufficient to support the coverage determination.

Likewise, Coyle's argument that the value of his ownership interest in the property should be discounted to reflect his minority interest in Black Ice is unavailing.  The market value of Coyle's fractional interest in Black Ice, 2876 Washington, or the entire parcel, relative to their overall market

value, is irrelevant here.  Coyle's ownership interest in Black Ice was 28% according to its operating agreement and his own deemed admissions, regardless of whether he could have only sold his interest in it for less than 28% of the total market value of Black Ice on the open market.

In light of the undisputed facts and Coyle's deemed admissions, through his ownership in Black Ice, Coyle owned 28% of 2876 Washington.  As an individually saleable dwelling unit, 2876 Washington is "real property" within the meaning of the policy, regardless of the fact that it was held as a TIC that contained other units.  Therefore, exclusion w applies and Chartsis need not defend or indemnify defendants in the *Ferguson* action.  Chartsis is entitled to recoupment of the amounts it has spent on defendants' defense in the *Ferguson* case, subject to proof.

V.    CONCLUSION

The motions to dismiss and motions for relief from automatic admissions are denied.  The motions for summary judgment are granted.  Accordingly, summary judgment as to liability is granted in case number 11-5696 on all claims for relief and partial summary judgment as to liability is granted in case number 12-2935 on the first, second, and fourth claims for relief.

IT IS SO ORDERED.

Dated:    4/15/2013

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE